UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

MATTHEW DAVIS, D.O.,

    Plaintiff,

v.                                        CIVIL ACTION NO. 5:23-cv-00672

APPALACHIAN REGIONAL HEALTHCARE, INC. and
APPALACHIAN REGIONAL HEALTHCARE, INC.,
*doing business as Beckley ARH Hospital,* and
BECKLEY EMERGENCY PHYSICIANS, LLC and
TSG RESOURCES, INC., *doing business as SCP Health*,

    Defendants.

### MEMORANDUM OPINION AND ORDER

Pending are Defendant TSG Resources, Inc. d/b/a SCP Health's ("TSG") Motion to Dismiss [Doc. 6], filed October 24, 2023, and Defendant Beckley Emergency Physicians, LLC's ("BEP") Motion for Judgment on the Pleadings [Doc. 13], filed November 27, 2023, along with additional motions identified and adjudicated at the conclusion of this written opinion and order. Plaintiff Dr. Matthew Davis responded to the Motion to Dismiss on October 27, 2023, [Doc. 11], to which TSG replied on November 3, 2023, [Doc. 12]. Dr. Davis responded to the Motion for Judgment on the Pleadings on December 8, 2023 [Doc. 15], to which BEP replied on December 15, 2023, [Doc. 20]. The matters are ready for adjudication.

**I.**

On March 1, 2018, Dr. Davis contracted with BEP to provide healthcare services as an independent contractor at Beckley Appalachian Regional Healthcare Hospital ("BARH").

[Doc. 1 Ex. 1 ¶ 9]. The contract contained a West Virginia choice-of-law provision. [*Id.* ¶ 10]. On November 1, 2018, Dr. Davis contracted with BEP to serve as the Assistant Medical Director at BARH. [*Id.* ¶ 11]. On July 1, 2019, Dr. Davis entered a new contract with BEP to continue providing healthcare services as an independent contractor at BARH. [ECF 1-1, ¶ 13]. This contract contained a Georgia choice-of-law provision. [*Id.* ¶ 14].

Sometime on or before June 14, 2021, Dr. Davis filed a patient safety report with the Office of Health Facility Licensure and Certification ("OHFLAC"). [*Id.* ¶ 19]. Rocky Massey, the CEO of BARH, later emailed Dr. Davis stating as follows: "I have been informed that you contacted OHFLAC and reported BARH related to an issue with the patient from Psych. Please tell me that is NOT the case?" [*Id.* ¶ 20]. Mr. Massey then attempted to contact Dr. Larry Francis, the Regional Medical Officer at SCP Health and Board of Trustees member at Appalachian Regional Healthcare, Inc. ("ARH"), to have Dr. Davis terminated for the OHFLAC report. [*Id.* ¶ 21; Doc. 14 at 2]. Dr. Davis reported this retaliatory behavior to BARH Risk Manager Vicki Forinash. [Doc. 1 Ex. 1 ¶ 21]. On June 28, 2021, having received no response from BARH, Dr. Davis assisted the Nurse Manager, Dolly Bolen, in surfacing to SCP Health hundreds of incident reports regarding BARH patient care delays. [*Id.* ¶ 23].

On July 20, 2021, Dr. Davis escalated an Emergency Medical Treatment and Labor Act Complaint by Nurse Bolen to ARH, BEP, and SCP Health management. [*Id.* ¶ 24]. In August 2021, Dr. Davis escalated a patient safety complaint concerning the performance of a rape kit to ARH, BEP, and SCP Health management. [*Id.* ¶¶ 25-29]. On September 1, 2021, Mr. Massey emailed Dr. Francis requesting "the immediate removal of Dr. Matt Davis due to his continued misbehavior." [Doc. 8 Ex. 2 at 2]. That same day, Dr. Davis received a call from Dr. Francis informing him that "'they' did not like the way that he documented the rape kit." [Doc. 1 Ex. 1

2

¶ 30]. On September 15, 2021, Dr. Davis received a letter from SCP Health terminating him from BEP at BARCH, effective September 1, 2021. [*Id.* ¶ 32].

On August 30, 2023, Dr. Davis instituted this action against Defendants ARH, ARH d/b/a/ BARH, BEP, and TSG in the Circuit Court of Raleigh County. [Doc. 1 Ex. 1]. Dr. Davis asserts the following claims: (1) Count I – retaliation in violation of the West Virginia Patient Safety Act ("PSA"), *West Virginia Code* section 16-39-1 to -8, (2) Count II – discharge in violation of West Virginia public policy, (3) Count III – civil conspiracy, (4) Count IV – intentional interference with business relations, and (5) Count V – breach of contract. [*Id.*]. Dr. Davis also requests in Count VI a declaratory judgment voiding the choice-of-law provision as modified in his BEP employment contract. [*Id.*].

On October 10, 2023, BEP removed. [Doc. 1]. On October 24, 2023, TSG moved to dismiss for failure to state a claim. [Doc. 6]. TSG contends the Complaint fails to allege any wrongdoing on the part of TSG and does not plead sufficient facts to set forth a claim against TSG. [*Id.* at 2–3]. TSG further contends Dr. Davis's claim under the PSA fails because Dr. Davis does not identify TSG as a "healthcare entity." [*Id.*].

On November 27, 2023, BEP moved for judgment on the pleadings [Doc. 13]. BEP contends it had a contractual right to terminate Dr. Davis without notice upon request from BARH. [*Id.* at 4]. BEP also asserts Dr. Davis's public policy claim fails inasmuch as there is a statutory remedy available. [*Id.* at 5].

## II.

**A.     Motion to Dismiss**

*Federal Rule of Civil Procedure* 8(a)(2) requires that a pleader provide "a short and

3

plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Any defense presented under Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Thus, the motion to dismiss must be filed before any answer to the complaint is filed. Additionally, and as an aside, any answer must be filed within twenty-one days of the issuance of the summons, except for situations wherein that timeline is enlarged by the court. Fed. R. Civ. P. 12(a).

The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions." *Twombly*, 550 U.S. at 555. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *McCleary-Evans*, 780 F.3d at 585; *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 122, 141 S. Ct. 1376 (2021); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012)) (internal quotation marks omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting

4

the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Robertson*, 679 F.3d at 288.

The decision in *Iqbal* provides some additional markers concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief. . . .'"
>
> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678–79 (citations omitted).

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also S.C. Dep't of Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (citing *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[]

all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### B. *Motion for Judgment on the Pleadings*

*Federal Rule of Civil Procedure* 12(c) permits a party to move for judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Rule 12(c) motions are subject to the same standard as motions to dismiss under Rule 12(b)(6). *Short v. Hartman*, 87 F.4th 593, 603 (4th Cir. 2023). "That standard requires that we accept all facts pled in the complaint as true and 'draw all reasonable inferences in favor of the plaintiff.'" *Id.* (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

### III.

### A. *TSG's Motion to Dismiss*

#### 1. Count I – PSA Claim

The PSA provides that no employer may retaliate or discriminate against any health care worker who:

> (1) Makes a good faith report . . . to the health care entity or appropriate authority an instance of wrongdoing or waste[;]
>
> (2) Advocated on behalf of a patient or patients with respect to the care services or conditions of a health care entity;
>
> (3) Initiated, cooperated or otherwise participated in any investigation or proceeding of any governmental entity relating to the care, services or conditions of a health care entity.

W. Va. Code § 16-39-4.

A "health care worker" is one who "provides direct patient care to patients of a

health care entity" and who is either an employee, subcontractor, or independent contractor of the entity. *Id.* § 16-39-3. "Any health care worker who believes that he or she has been retaliated or discriminated against in violation of [*West Virginia Code* section 16-39-4] may file a civil action in any court of competent jurisdiction against the health care entity and the person believed to have violated . . . this article." *Id.* § 16-39-6. Importantly, the PSA defines a "health care entity" as a "health care facility, such as a hospital, clinic, nursing facility, or other provider of healthcare services." *Id.* § 16-39-3. The PSA does not, however, define the term "person."

In *State ex rel. Grant County Commission v. Nelson*, 244 W. Va. 649, 856 S.E.2d 608 (2021), the Supreme Court of Appeals of West Virginia held county commissions that own public hospitals are not "health care entities" under the PSA so long as they "do[] not otherwise provide health care services." Syl. Pt. 4, *id.* at 652, 856 S.E.2d at 610. The West Virginia Court did not, however, address whether a county commission could be held liable under the PSA as a "person." Instead, after determining the county commission was not a health care entity, the Court held the PSA claims against it could not move forward. *Id.* at 658, 856 S.E.2d at 618.

Although Dr. Davis alleges "[TSG] was the parent corporation of Defendant BEP," [Doc. 1 Ex. 1 ¶ 7], he does not allege TSG otherwise provides any health care services. Rather, Dr. Davis maintains TSG qualifies as a "person" and the PSA vests a health care worker with a right of action "against the health care entity *and the person* believed to have violated" the PSA. W. Va. Code § 16-39-6(a) (emphasis supplied); [Doc. 11 at 5]. The contention fails for at least two reasons.

First, as noted in the separate opinions in the *Nelson* case, the majority could have addressed whether the subject county commission qualified as a "person" under the PSA. It did not do so. *Nelson*, 244 W. Va. at 661, 856 S.E.2d at 620 (Wooten, J., concurring); *id.* at 665, 856

7

S.E.2d at 624 (Walker, J., concurring in part and dissenting in part). That omission, along with a statement in the decision in *Nelson*, seems telling: "The [PSA] allows [a plaintiff], a health care worker and an employee of the [defendant hospital], to file a civil action against a *health care entity*, not against a county commission that does not provide 'health care services.'" *Id.* at 657, 856 S.E.2d at 617 (emphasis in original).

Second, and more importantly, our Court of Appeals has observed it is the duty of a federal court to rule upon state law as it exists and not to suggest its expansion. *See, e.g.*, *Bel v. Joy Technologies, Inc.*, 958 F.2d 36, 39 (4th Cir. 1991); *Washington v. Union Carbide Corp.*, 870 F.2d 957, 962 (4th Cir. 1989); *Guy v. Travenol Lab'ys, Inc.*, 812 F.2d 911, 917 (4th Cir. 1987); *see Wells v. Liddy*, 186 F.3d 505, 527–28 (4th Cir.1999); *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992). The interpretation urged by Dr. Davis would, at a minimum, appreciably expand liability under the PSA. Absent so much as a precedential glint that West Virginia law is headed in that direction, binding precedent counsels restraint.

Based upon the foregoing discussion, and inasmuch as Dr. Davis alleges no facts concerning TSG's status beyond the corporation's ownership interest in BEP, no PSA claim is stated against TSG.

Accordingly, the Court **DISMISSES WITH PREJUDICE** Dr. Davis's PSA claim against TSG.

### 2. Count II – Public Policy Claim

TSG contends Dr. Davis's public policy claim -- often referred to as a *Harless* claim -- fails as he was not an "at-will employee." *See generally Harless v. First Nat'l Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978). TSG asserts Dr. Davis was, instead, an independent contractor of BEP. [Doc. 7 at 3].

8

"In *Harless*, the court declared that an employer may not terminate an at-will employee 'where the employer's motivation for the discharge contravenes some substantial public policy principle.'" *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 757 (4th Cir. 1996) (quoting *Harless*, 162 W. Va. at 124, 246 S.E.2d at 275). Dr. Davis maintains that while *Harless* discussed at-will employment, "it in no way limited its ruling to at-will employees or precluded a claim for violation of West Virginia public policy in other employment settings." [Doc. 11 at 6]. Public policy claims for wrongful discharge, however, are typically framed as "exceptions" to at-will employment in West Virginia. *See, e.g.*, *Harless*, 162 W. Va. at 124, 246 S.E.2d at 275 ("[T]he absolute right to discharge an at will employee must be tempered by the further principle that where the employer's motivation for the discharge contravenes some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by the discharge."); *see also Jarrell v. Frontier W. Va., Inc.*, 249 W. Va. 335, 342, 895 S.E.2d 190, 199 (2023) (holding that "West Virginia Code § 61-3-49b (eff. 2012) does not establish a substantial public policy exception to the at-will employment doctrine . . . .").

At least one of the Undersigned's colleagues has concluded a *Harless* claim is unavailable in an analogous setting. *See Fugate v. Frontier W. Va., Inc.*, No. 2:17-CV-00559, 2017 WL 3065216, at *2 (S.D. W. Va. Jul. 19, 2017) ("The common law cause of action recognized in *Harless*, on the other hand, does not have statutory underpinnings and is available only to at will employees. Any expansion of the claim is best left to the West Virginia courts."). Although the Undersigned does not often have occasion to rely upon unpublished, district court authority, the decision in *Fugate* is especially noteworthy inasmuch as it based its analysis and ruling upon recent precedent from the Supreme Court of Appeals of West Virginia. *Id.* (discussing *Frohnapfel v. ArcelorMittal USA LLC*, 235 W. Va. 165, 772 S.E.2d 350 (2015)).

In sum, a *Harless* claim is unavailable to Dr. Davis. Accordingly, the Court **DISMISSES** Dr. Davis's public policy claim against TSG.

### 3. Count III – Civil Conspiracy Claim

Under West Virginia law, a civil conspiracy requires "two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." Syl. Pt. 8, *Dunn v. Rockwell*, 225 W. Va. 43, 47, 689 S.E.2d 255, 259 (2009). It "is not a per se, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." Syl. Pt. 9, *Id.*

Dr. Davis has not pled civil conspiracy as a stand-alone claim. He has instead alleged TSG conspired with other Defendants to commit other wrongful acts. [Doc. 1 Ex. 1 ¶¶ 46–50]. Specifically, Dr. Davis has alleged that ARH and BARH tortiously interfered with his business relationships and averred that all Defendants collectively agreed and conspired to commit the conduct set forth in the Complaint. [*Id.* ¶¶ 48, 51–56]. TSG's contention that "[Dr. Davis] does not plead any facts that would allow it to hold TSG liable under a civil conspiracy" misapprehends civil conspiracy jurisprudence. A party need not commit the tort itself to have conspired in its commission. *Dunn*, 225 W.Va. at 57, 689 S.E.2d at 269. Rather, "[a] conspiracy may produce one or more torts. If it does, then every conspirator is liable for that tort, including a conspirator who promoted but did not commit the tort." *Id.* Thus, Dr. Davis's civil conspiracy claim survives at this stage. Accordingly, the Court **DENIES** TSG's motion as to Count III.

B.  *BEP's Motion for Judgment on the Pleadings*

The Motion for Judgment on the Pleadings is without merit and subject to summary disposition in all but one respect.

Dr. Davis's public policy claim against BEP fails inasmuch as Dr. Davis has a statutory remedy available. Implicit in a public policy claim is the absence of another remedy for a plaintiff to enforce the subject public policy. *Hill v. Stowers*, 224 W. Va. 51, 61, 680 S.E.2d 66, 76 (2009) ("In *Harless*, this Court found that a private cause of action was appropriate because there was no other mechanism available to enforce the public policy at issue."). My colleagues have uniformly concluded that where a statutory scheme provides (1) a public policy protection, (2) a cause of action for a violation of that policy, and (3) a specific remedy, one must resort to the statutory scheme. *Guevara v. K–Mart Corp.*, 629 F. Supp. 1189, 1191 (S.D. W. Va. 1986); *see also Taylor v. City Nat'l Bank*, 642 F. Supp. 989, 998 (S.D. W. Va. 1986); *Burgess v. Gateway Commc'ns-WOWK TV*, 984 F. Supp. 980, 983 (S.D. W. Va. 1997); *Hope v. Bd. of Dirs. of Kanawha Pub. Serv. Dist.*, No. 2:12-CV-6559, 2013 WL 3340699, at *4 (S.D. W. Va. July 2, 2013).

Dr. Davis alleges that "West Virginia recognizes a substantial public policy disfavoring discrimination and/or the taking of adverse employment actions based upon the reporting of patient safety concerns." [Doc. 1 Ex. 1 ¶ 42]. Inasmuch as the PSA is the source of that public policy and, correspondingly, provides a claim for relief, resort to *Harless* is forbidden. Accordingly, the Court **GRANTS** BEP's Motion as to Count II.

IV.

Based upon the foregoing discussion, the Court **ORDERS** as follows respecting

11

TSG's Motion to Dismiss, BEP's Motion for Judgment on the Pleadings, and additional pending motions herein:

1. TSG's Motion to Dismiss [**Doc. 6**] is **GRANTED IN PART**, and Counts I and II are **DISMISSED** as to TSG;

2. BEP's Motion for Judgment on the Pleadings [**Doc. 13**] in **GRANTED IN PART**, and Count II is **DISMISSED** as to BEP;

3. BEP's Unopposed Motion for a Hearing on Pending Motions [**Doc. 33**], filed March 8, 2024, is **DENIED AS MOOT**.

The Clerk is **DIRECTED** to transmit a copy of this written opinion and order to all counsel of record and to any unrepresented party.

ENTER:        May 15, 2024



Frank W. Volk
United States District Judge